IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BMC SOFTWARE, INC. | § | |
| | § | |
| Plaintiff, | § | Case No. 4:19-cv-4810 |
| | § | |
| vs. | § | |
| | § | |
| BAKER HUGHES, A GE COMPANY, | § | |
| LLC AND BAKER HUGHES COMPANY | § | |
| | § | Jury Trial Requested |
| Defendants. | § | |

**FIRST AMENDED COMPLAINT**

Plaintiff BMC Software, Inc. ("BMC") files this First Amended Complaint against Defendants Baker Hughes, a GE Company, LLC and Baker Hughes Company (collectively "Baker Hughes" or "Defendants"), as follows:

**I.**
**NATURE OF ACTION**

1.      This is a civil action to (i) enjoin acts of the following: trademark infringement under 15 U.S.C. § 1114; unfair competition including false designation of origin under 15 U.S.C. § 1125(a); common law trademark infringement; unjust enrichment and unfair competition; and (ii) recover damages, profits, treble damages or profits, attorneys' fees, and costs.  This case involves Baker Hughes' use of trademarks, including in advertising and promoting enterprise and AI products and services, that are confusingly similar to BMC's trademarks.

2.      Baker Hughes has intentionally copied and usurped trademarks that make BMC's company, products and services immediately identifiable and unique. Baker Hughes' conduct is unlawful, and BMC seeks the full range of remedies provided by law.

## II.
## PARTIES

3.      Plaintiff BMC ("BMC" or "Plaintiff") is a Delaware corporation with its principal place of business at 2103 CityWest Boulevard in Houston, Texas.

4.      Defendant Baker Hughes, a GE company, LLC  is a Delaware limited liability company with its principal place of business at 17021 Aldine Westfield Road in Houston, Texas.

5.      Defendant Baker Hughes Company is a Delaware corporation with its principal place of business at 17021 Aldine Westfield Road in Houston, Texas.

6.      As noted above, Defendants Baker Hughes, a GE company, LLC and Baker Hughes Company are collectively referred to herein as "Baker Hughes" or "Defendants."

## III.
## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq., and 28 U.S.C. §§ 1331, 1338(a). The Court also has supplemental jurisdiction over BMC's state law claims under 28 U.S.C. §§ 1338 and 1367.

8.      The Court has general and specific personal jurisdiction over Baker Hughes, including due to its continuous and systematic business dealings in Texas and due to its specific acts of trademark infringement that have occurred in Texas.  Venue is proper in this District, including pursuant to 28 U.S.C. § 1391(b), (c), and (d).

## IV.
## FACTUAL BACKGROUND

9.      Founded in Texas in 1980, BMC has grown to become one of the world's leading software providers and a global leader in information technology ("IT") solutions for the digital enterprise.  For almost four decades, BMC has been dedicated to increasing visibility, security, and availability across IT infrastructure and services in the areas of artificial intelligence ("AI"), automation, optimization,

2

performance, security and service management, covering everything from mainframe to multi-cloud. BMC has unmatched experience in IT management, supporting 92 of the Forbes Global 100, and earning recognition as an ITSM Gartner Magic Quadrant Leader for six years running.   BMC's industry-leading solutions help 10,000+ customers across the globe, including many in the oil and gas industry.  Many of the world's largest companies rely on BMC to run their business with AI operations and machine learning, cognitive service management, multi-cloud management, digital business automation, security operations, and the modern mainframe. The BMC portfolio of open, scalable, modular and AI-driven technologies ensures that its customers can run and reinvent their businesses for growth and competitive edge while optimizing cost, performance, and security.  BMC has invested approximately $8 billion in research and development to provide these technologies and solutions to its customers, and BMC does so under the BMC Marks (as such term is defined below).

**A.      The BMC Marks**

10.      Since at least as early as October 6, 2014, BMC adopted and used a mark evocative of a helix

(the "BMC Helix Mark"), including as follows:  .  The BMC Helix Mark is evocative of a portion of helix and it is evocative of a mobius strip,[1] including because it has no beginning or end. The BMC Helix Mark is sometimes used by itself and sometimes used as a composite mark adjacent to "BMC,"

for example:          (the "BMC Composite Helix Mark").  The BMC Helix Mark and the BMC Composite Helix Mark are referred to herein collectively as the "BMC Helix Marks."

11.      Sometimes the BMC Helix Marks have a uniform color, and sometimes they are shaded, which further highlights the endless nature of the loop and enhances the mark's impression as a mobius, for

---

[1] A mobius strip, loop or band comprises a geometrical object with no beginning or end.

3

example: , ,  and . The foregoing is referred to herein as the "BMC Shaded Helix Mark."

12.    The BMC Helix Marks have been used by BMC in U.S. commerce as an identifier of the source of BMC's products and services continuously since at least as early as October 6, 2014.

13.    The BMC Shaded Helix Mark has been used by BMC in U.S. commerce as an identifier of the source of BMC's products and services continuously since at least as early as September 15, 2018.

14.    BMC has federally registered its BMC Helix Marks with the United States Patent & Trademark Office in connection with various software products in International Class 9 (which includes



computers and computer software). Registration Number 4,759,874 covers the following logo:



, and Registration Number 4,759,872 covers to the following composite logo:                        . Both registrations identify a wide array of software products in Class 9, including, for example, computer software and computer application software for mobile devices, desktop devices, and web applications for use in the field of general business processes, namely, as a help desk solution allowing a user to identify and resolve problems associated with the user's computer network; computer software for use in maintaining a database of problems and solutions identified on a user's computer network; computer software, namely, system management software focused on the provisioning, configuration, and change management of data center infrastructure; computer software and programs for managing computer systems, databases, and applications, namely, providing data management, information technology process automation, application management, storage and performance

4

optimization, and recovery of mainframe and distributed systems computers, and the databases, business applications, programs, and systems that operate therein; computer software for computer systems and computer network management, namely, software for computer network monitoring and computer system diagnostics; computer software and computer application software for mobile devices, desktop devices, and web applications, namely, software for managing, deploying, and removing software applications, maintaining software inventories, maintaining software license compliance, and managing application security on mobile devices, desktop devices, and cloud computing networks; computer software and computer application software for mobile devices, desktop devices, and web applications, namely, software for use as a virtual concierge that provides awareness of and access to available services, content, and alerts; computer software and computer application software for mobile devices, desktop devices, and web applications that provides a virtual help desk and self-help computer and software support services; computer software and computer application software for mobile devices, desktop devices, and web applications that provides real-time, integrated service management of other computer software, information systems, computer hardware, computer networks, and information databases; computer software and computer application software for mobile devices, desktop devices, and web applications that provides real-time alerts and updates for end-to-end performance management; computer software and computer application software for mobile devices that provides access to applications and services through a mobile operating system and interface; computer software and computer application software for desktop devices that provides access to applications and services through a desktop operating system and interface; computer software and computer application software for web-based devices that provides access to applications and services through a web-based system and interface; computer software and computer application software for mobile devices, desktop devices, and web applications

5

that provides synchronization of applications and content across platforms and devices; computer software and computer application software for mobile devices, desktop devices, and web applications that delivers user-specific information about usage, compliance, location, applications, devices, and location-aware services and resources; computer software and computer application software for mobile devices, desktop devices, and web applications that delivers location-aware service, updates, and notifications; computer software and computer application software for mobile devices, desktop devices, and web applications that provides appointment scheduling and appointment notifications; computer software and computer application software for mobile devices, desktop devices, and web applications, to manage a concierge service; and computer software and computer application software for mobile devices, desktop devices, and web applications that provides secure access and storage of documents.

15.     Further, BMC has federally registered its BMC Helix Marks with the United States Patent & Trademark Office in connection with various consulting, technical support, and software as a service ("SAAS") services in International Class 42 (which includes scientific and technological services).

Registration Number 4,759,870 covers the following composite logo:  , and

Registration Number 4,759,869 covers the following logo: . Both registrations identify a wide array of technology and software services specifically including, for example, consulting services relating to research and design of computer hardware and computer software for others; technical consulting services, namely, troubleshooting of computer hardware and software problems via phone, email and in person; maintenance services for computer software; computer programming services for others in the field of general business processing; SAAS services featuring computer software for use in the field of general business processes, namely, as a help desk solution allowing a user to identify

and resolve problems associated with the user's computer network and to maintain a database of identified problems and solutions; computer consulting services in the field of system management software focused on the provisioning, configuration and change management of data center infrastructure; SAAS services featuring, computer software, namely, system management software focused on the provisioning, configuration and change management of data center infrastructure; SAAS services featuring computer software and programs for managing computer systems, databases and applications, namely, providing data management, information technology process automation, application management, storage and performance optimization and recovery of mainframe and distributed systems computers and the database and business applications, programs, and systems that operate therein; remote and on-site monitoring of computer systems; SAAS services featuring computer software for computer systems and computer network management, namely, software for computer network monitoring and computer system diagnostics; SAAS services featuring software for managing, deploying, and removing software applications, maintaining software inventories, maintaining software license compliance, and managing application security on mobile devices, desktop devices, and cloud computing networks; SAAS services featuring software for use as a virtual concierge that provides awareness of and access to available services, content, and alerts; SAAS services featuring software that provides a virtual help desk and self-help computer and software support services; SAAS services featuring software that provides real-time, integrated service management of other computer software, information systems, computer hardware, computer networks, and information databases; SAAS services featuring software that provides real-time alerts and updates for end-to-end performance management; SAAS services featuring software that provides access to applications and services through a mobile operating system and interface; SAAS services featuring software that provides access to applications and services through a desktop operating system

7

and interface; SAAS services featuring software that provides access to applications and services through a web-based system and interface; SAAS services featuring software that provides synchronization of applications and content across platforms and devices; SAAS services featuring software that delivers user-specific information about usage, compliance, location, applications, devices, and location-aware services and resources; SAAS services featuring software that delivers location-aware service, updates, and notifications; SAAS services featuring software that provides appointment scheduling and appointment notifications; SAAS services featuring software that manages a concierge service; and SAAS services featuring software that provides secure access and storage of documents.

16.    The trademarks and service marks covered by Registration Numbers 4,759,874, 4,759,872, 4,759,870 and 4,759,869 are referred to herein, individually and collectively, as the BMC Registered Marks.

17.    Notably, none of the goods or services identified in Registration Numbers 4,759,874, 4,759,872, 4,759,870 and 4,759,869 include a trade channel or other industry-specific limitation.  The goods and services covered by these registrations, therefore, are presumed to be and are, in fact, industry agnostic.  BMC's products, solutions and services are purchased and used by businesses of all varieties, including those in the oil and gas industry.

18.    BMC's U.S. Trademark Application No. 88/708,723 for the BMC Shaded Helix Mark, *i.e.*,



, was filed on November 27, 2019.  It too covers wide array of technology and software services in International Class 42 (which includes scientific and technological services), and specifically includes, for example, consulting services relating to research and design of computer hardware and computer software for others; technical consulting services, namely, troubleshooting of computer

hardware and software problems via phone, email and in person; maintenance services for computer software; computer programming services for others in the field of general business processing; SAAS services featuring computer software for use in the field of general business processes, namely, as a help desk solution allowing a user to identify and resolve problems associated with the user's computer network and to maintain a database of identified problems and solutions; computer consulting services in the field of system management software focused on the provisioning, configuration and change management of data center infrastructure; SAAS services featuring, computer software, namely, system management software focused on the provisioning, configuration and change management of data center infrastructure; SAAS services featuring computer software and programs for managing computer systems, databases and applications, namely, providing data management, information technology process automation, application management, storage and performance optimization and recovery of mainframe and distributed systems computers and the database and business applications, programs, and systems that operate therein; Remote and on-site monitoring of computer systems; SAAS services featuring computer software for computer systems and computer network management, namely, software for computer network monitoring and computer system diagnostics; SAAS services featuring software for managing, deploying, and removing software applications, maintaining software inventories, maintaining software license compliance, and managing application security on mobile devices, desktop devices, and cloud computing networks; SAAS services featuring software for use as a virtual concierge that provides awareness of and access to available services, content, and alerts; SAAS services featuring software that provides a virtual help desk and self-help computer and software support services; SAAS services featuring software that provides real-time, integrated service management of other computer software, information systems, computer hardware, computer networks, and information databases; SAAS services featuring software that provides real-

time alerts and updates for end-to-end performance management; SAAS services featuring software that provides access to applications and services through a mobile operating system and interface; SAAS services featuring software that provides access to applications and services through a desktop operating system and interface; SAAS services featuring software that provides access to applications and services through a web-based system and interface; SAAS services featuring software that provides synchronization of applications and content across platforms and devices; SAAS services featuring software that delivers user-specific information about usage, compliance, location, applications, devices, and location-aware services and resources; SAAS services featuring software that delivers location-aware service, updates, and notifications; SAAS services featuring software that provides appointment scheduling and appointment notifications; SAAS services featuring software that manages a concierge service; SAAS services featuring software that provides secure access and storage of documents; SAAS services featuring software that provides cognitive service management; SAAS services featuring software that provides chatbots and virtual agents; SAAS services featuring software that provides self-service resolutions for information technology support requests; SAAS services featuring software that provides a catalog of available products and services; SAAS services featuring software that provides information, data and analytics with regard to data centers and digital assets; SAAS services featuring software that allows users to map relationships across multiple cloud platforms; SAAS services featuring software that determines which digital assets have an impact on critical business functions; SAAS services featuring software that automatically classifies, assigns and routes service management requests; SAAS services featuring software that allows users to automate workflows; and SAAS services featuring software that provides case management.

19.     All iterations of the BMC Helix Marks, the BMC Modified Composite Helix Marks and BMC Shaded Helix Mark are referred to herein, individually and collectively, as the "BMC Marks." Further

examples of BMC's use of the BMC Marks may be found on BMC's website (*e.g.*, www.bmc.com), and in its marketing and product materials.

20.     The distinctive BMC Marks signify, among other things, that BMC is a driver of innovation and transformation.

21.     The BMC Marks may be used over any color, including any color within the BMC color palette, for example:

   

Further, it should be noted that blue is also a key part of BMC's color palette.

22.     BMC uses its distinctive BMC Marks in connection with the marketing and sale, including licensing, of its products and services, including among other things, enterprise level and AI software and SAAS, including as noted above.  For example, and without limitation, on November 8, 2018, BMC announced the availability of the BMC Helix Cognitive Service Management solution on Microsoft Azure.

**B.     Baker Hughes' Unlawful Actions**

23.     On or about October 9, 2019, Baker Hughes announced a rebranding using the following logos:

 and which are at times used alone and at times used in combination with other

words  or  logos,  for  example  "Baker  Hughes"  and/or  C3.ai's  logo: ,

11

, and  .These are referred to herein, individually and collectively as the "Baker Marks."

24. Baker Hughes' rebranding under the Baker Marks was part of an effort to rebrand itself as a technology company, including to emphasize its software and SAAS offerings for enterprise level, AI, and other software and service related offerings in spaces already occupied by BMC's products, solutions and services.  An example of this rebranding effort is shown in the advertisement below which appears at George Bush Intercontinental Airport:



25. On information and belief, part of this rebranding was to emphasize a planned "alliance" between Baker Hughes, C3.ai, and Microsoft Corporation to bring enterprise AI solutions to the energy industry on Microsoft Azure.  This "alliance" was announced by Baker Hughes on or about November 19, 2019.  As noted above, on November 8, 2018, BMC had announced the availability of the BMC Helix Cognitive Service Management solution on Microsoft Azure.

26. This "alliance" with C3.ai and Microsoft illustrates the likelihood for consumer confusion.  Without limitation, Baker Hughes' customers will already be accustomed to Baker Hughes' "partnering" with other

technology companies.  Because of the striking similarities between the BMC Marks and the Baker Marks, BMC's customers, especially in the oil and gas industry, are likely to incorrectly assume, among other things, that Baker Hughes has also allied with BMC and that Baker Hughes' products and services are powered by or otherwise contain BMC's software.

27.     The likelihood of confusion is evidenced in part by Defendant Baker Hughes, a GE company, LLC's pending U.S. Trademark Application No. 88/643,061 for one of the above-noted marks:



, which purports to include coverage for "downloadable computer software for use in data collection, transmission, integration, visualization, analysis and storage in the field of oil and gas; downloadable computer software for use in connection with a network of physical objects, devices, vehicles, and buildings which are embedded with electronics, software, sensors and network connectivity all of which enable these objects, devices, vehicles, and buildings to collect and exchange and report data in the field of oil and gas; downloadable software for use in measuring and analyzing data retrieved from oil and gas wells" in International Class 9 and "software as a service ('SAAS') services featuring software that combines autonomic computing and cognitive artificial intelligence engineering technology for use in the oil and gas industry; software as a service ('SAAS') services featuring software for use in collecting, analyzing, and delivering data and information to optimize performance in the industrial process, equipment and production systems across the upstream, midstream and downstream segments of the oil and gas industry" in International Class 42.

28.     On information and belief, Baker Hughes was aware of the BMC Marks when Baker Hughes chose and decided to use the Baker Marks.

29.     Baker Hughes' intentional and unauthorized actions constitute infringement of the BMC Marks and an attempt to unfairly compete in violation of federal and state law, and constitute statutory and common law trademark infringement and unfair competition.

30.     Baker Hughes' unauthorized use of marks confusingly similar to the BMC Marks will allow Baker Hughes to receive the benefit of the goodwill built up at the great labor and expense by BMC and embodied in the BMC Marks, and further will allow Baker Hughes to gain acceptance for its software and SAAS offerings, including enterprise and AI offereings, based not on their own merits, but on an association with the reputation and goodwill of BMC.

31.     Baker Hughes' unauthorized use of marks confusingly similar to the BMC Marks constitutes an invasion of BMC's valuable property rights in a manner that unjustly enriches Baker Hughes.

32.     Baker Hughes' use of marks confusingly similar to the BMC Marks falsely indicates to the purchasing public that software and services of Baker Hughes are in some manner connected with, sponsored by, affiliated with, or related to BMC and/or its products and services.

33.     Use by Baker Hughes of marks confusingly similar to the BMC Marks places the valuable reputation and goodwill of BMC in the hands of Baker Hughes, over whom BMC has no control.

34.     Baker Hughes' activities are likely to cause confusion, or to cause mistake, or to deceive customers or potential customers wishing to purchase services or products sponsored by, associated with, or affiliated with BMC.

35.     The BMC Marks are entitled to protection under Texas and federal law. BMC has extensively and continuously promoted and used the BMC Marks for years throughout the United States including in the State of Texas. Through such extensive and continuous use, the BMC Marks have become well-known indicators of the origin and quality of BMC's products and services in the United States and in the State of Texas (including in the geographic area of Houston), and the BMC Marks are widely

recognized by the relevant purchasing public throughout Texas and the United States as a designation of source. The BMC Marks have also acquired substantial secondary meaning in the marketplace throughout the United States, including in the State of Texas.  Moreover, the BMC Marks acquired this secondary meaning before Baker Hughes commenced its misuse of the BMC Marks, namely its use of the Baker Marks and/or colorable imitations thereof.

36.     This action is being brought to prevent any further infringement of BMC's intellectual property rights under federal and Texas law and to compensate BMC for the harm caused by Baker Hughes willful actions.

**V.**
**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. SECTION 1114**

37.     BMC incorporates the allegations set forth in Section IV.

38.     BMC owns all rights, title, and interest in and to the BMC Marks.

39.     Baker Hughes has infringed and continues to infringe the BMC Marks, which are federally registered, with the exception of pending U.S. Trademark Application No. 88/708,723, which will likely soon be federally registered, and once granted, would fall within the definition of "BMC Registered Marks" and also within this and the below federal trademark infringement claims, once the mark is officially registered.

40.     Baker Hughes' actions are in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, including that such actions or cause mistake or to deceive as to the affiliation, connection or association of Baker Hughes' and its products and services with BMC and its products, solutions and services.

41.     Because of Baker Hughes' infringement, BMC has been injured and damaged, and is entitled to recover damages sustained by BMC, Baker Hughes' profits, and costs of the action pursuant to 15 U.S.C. § 1117.

42.     Baker Hughes is using the BMC Registered Marks with full knowledge of BMC's rights, and in bad faith and with willful and deliberate intent to trade on BMC's substantial recognition, reputation, and goodwill.

43.     Including in view of the willful nature of Baker Hughes' infringement and unfair competition, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), allowing the court to award reasonable attorney fees.

44.     Baker Hughes' acts have damaged and will continue to damage BMC. BMC has no adequate remedy at law, including because injury to its goodwill, brand, reputation, and business interests, as well as confusion and deception among consumers, is difficult and sometimes impossible to quantify, and such injury cannot be fully compensated by a monetary amount. Accordingly, to prevent the violation of BMC's rights to the BMC Registered Marks, BMC is entitled to injunctive relief, including pursuant to 15 U.S.C. § 1116.

## VI.
### COUNT II
### UNFAIR COMPETITION UNDER 15 U.S.C. SECTION 1125(A)

45.     BMC incorporates the allegations set forth in Sections IV and V.

46.     Baker Hughes' actions, as described herein, constitute unfair competition, including in the form of false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Baker Hughes with BMC or as to the origin, sponsorhip, or approval of Baker Hughes' products, services, or commercial activities, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Baker Hughes, without authorization from BMC, has used and is continuing to use the Baker Marks which are confusingly similar to the BMC Marks.

16

47.     The foregoing acts of Baker Hughes are intended to cause, and are likely to cause, confusion, mistake, and deception among consumers, the public, and the trade, including as to whether Baker Hughes' products and services originate from, or are affiliated with, sponsored by, or endorsed by BMC.

48.     Baker Hughes has acted with knowledge of BMC's ownership of the BMC Marks, and with deliberate intention or willful blindness to unfairly benefit from the valuable goodwill symbolized thereby.

49.     Baker Hughes' unauthorized use in commerce of marks confusingly similar to the BMC Marks constitutes unfair competition which is likely to cause mistake or deception as to affiliation, connection, or association of Baker Hughes and its products and services with BMC, or as to the origin, sponsorship, or approval of Baker Hughes' products and services by BMC, or that there is an association, affiliation or connection between Baker Hughes' goods and services and BMC and its products, solutions and services, including by forward confusion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Likewise, Baker Hughes unauthorized use in the oil and gas market of marks confusingly similar to the BMC Marks is likely to result in reverse confusion, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50.     Baker Hughes has made and will continue to make profits and/or gains to which it is not in law or equity entitled due to Baker Hughes' violation of BMC's rights.

51.     Upon information and belief, Baker Hughes intends to continue its infringing acts, unless enjoined by this Court.

52.      As a direct and proximate result of Baker Hughes' actions, BMC has suffered and will continue to suffer irreparable harm to its goodwill, brand, reputation, and business interests.

53.     Baker Hughes' acts have damaged and will continue to damage BMC. BMC has no adequate remedy at law because injury to its goodwill, brand, reputation, and business interests, as well as confusion and deception among consumers, are difficult and sometimes impossible to quantify, and such injury cannot be fully compensated by a monetary amount. For these and other reasons, BMC is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

54.     Baker Hughes has acted with knowledge of BMC's ownership of the BMC Marks, and with deliberate intention or willful blindness to unfairly benefit from the valuable goodwill symbolized thereby. Because Baker Hughes' actions were taken and continue in willful, deliberate, and/or intentional disregard of BMC's rights, BMC is entitled to recover damages (including trebling of damages), costs, and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## VII.
### COUNT III
### COMMON LAW TRADEMARK INFRINGEMENT

55.     BMC incorporates the allegations set forth in Sections IV through VI.

56.     BMC owns all rights, title, and interest in and to the BMC Marks, including all common law rights in such marks.

57.     Baker Hughes' actions, as described herein, constitute common law trademark infringement.

58.     Baker Hughes' unauthorized and wrongful use of marks confusingly similar to the BMC Marks, in commerce in connection with Baker Hughes' products, services and business, likely to cause mistake or deception as to affiliation, connection, or association of Baker Hughes and its products and services with BMC and its products or service, or as to the origin, sponsorship, or approval of Baker Hughes' products and services by BMC, or that there is an association, affiliation or connection between Baker Hughes' products and services and BMC, including by forward confusion. Likewise, Baker Hughes unauthorized use in the oil and gas market of marks confusingly similar to the BMC

Marks is likely to result in reverse confusion. Baker Hughes' actions constitute trademark infringement under the common law of Texas.

59.     Upon information and belief, Baker Hughes' actions are with the knowledge of the BMC Marks and with the intent to cause confusion and/or to trade on BMC's reputation and goodwill.

60.     Upon information and belief, Baker Hughes has made and will continue to make profits and/or gains to which it is not in law or equity entitled due to Baker Hughes' violation of BMC's rights.

61.     As a direct and proximate result of Baker Hughes' actions, BMC has suffered actual damages, an award of which should include an award of Baker Hughes' profits for its use of marks that are confusingly similar to the BMC Marks.

62.     Upon information and belief, Baker Hughes intends to continue its infringing acts, unless restrained by this Court.

63.     As a direct and proximate result of Baker Hughes' actions, BMC has suffered and will continue to suffer irreparable harm to its goodwill, brand, reputation, and business interests.

64.     BMC has no adequate remedy at law because injury to its goodwill, brand, reputation, and business interests, as well as confusion and deception among consumers, is difficult and sometimes impossible quantify, and such injury cannot be fully compensated by a monetary amount. Unless Baker Hughes is permanently enjoined, BMC will continue to suffer irreparable harm.

65.     Upon information and belief, Baker Hughes' actions at all times relevant to this action have and continue to be knowing, intentional, wanton, willful, malicious, in bad faith, and oppressive, and based on information and belief, have resulted from fraud, malice, and/or gross negligence and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized by the BMC Marks. Accordingly, BMC is entitled to recovery all damages, actual and punitive, its costs, and its attorneys' fees as permitted by Texas law.

**VIII.**
**COUNT IV**
**COMMON LAW UNFAIR COMPETITION**

66.     BMC incorporates the allegations set forth in Sections IV through VII.

67.     Baker Hughes' activities, as described herein, constitute unfair competition under Texas common law at least because they are likely to cause mistake or deception as to affiliation, connection, or association of Baker Hughes and its products and services with BMC and its products or service, or as to the origin, sponsorship, or approval of Baker Hughes' products and services by BMC, or that there is an association, affiliation or connection between Baker Hughes' products and services and BMC, including by forward confusion. Likewise, Baker Hughes unauthorized use in the oil and gas market of marks confusingly similar to the BMC Marks is likely to result in reverse confusion.

68.     Upon information and belief, Baker Hughes' actions are with the knowledge of the BMC Marks and with the intent to cause confusion and/or trade on BMC's reputation and goodwill.

69.     Upon information and belief, Baker Hughes has made and will continue to make profits and/or gains to which it is not in law or equity entitled due to Baker Hughes' violation of BMC's rights.

70.     As a direct and proximate result of Baker Hughes' actions, BMC has suffered actual damages, an award of which should include an award of Baker Hughes' profits for its use of marks that are confusingly similar to the BMC Marks.

71.     Baker Hughes intends to continue its acts in violation of BMC's rights unless restrained by this Court.

72.     As a direct and proximate result of Baker Hughes' actions, BMC has suffered and will continue to suffer irreparable harm to its goodwill, brand, reputation, and business interests.

73.     BMC has no adequate remedy at law because injury to its goodwill, brand, reputation, and business interests, as well as confusion and deception among consumers, is difficult and sometimes

impossible to quantify, and such injury cannot be fully compensated by a monetary amount. Unless Baker Hughes is permanently enjoined, BMC will continue to suffer irreparable harm.

74.     Upon information and belief, Baker Hughes' actions at all times relevant to this action have and continue to be knowing, intentional, wanton, willful, malicious, in bad faith, and oppressive, and based on information and belief, have resulted from fraud, malice, and/or gross negligence and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized by the BMC Marks. Accordingly, BMC is entitled to recovery all damages, actual and punitive, its costs, and its attorneys' fees as permitted by Texas law.

## IX.
## COUNT V
## UNJUST ENRICHMENT

75.     BMC incorporates the allegations set forth in Sections I through VIII.

76.     The acts of Baker Hughes complained of above constitute unjust enrichment, at least because Baker Hughes has wrongly obtained benefits at BMC expense.

## X.
## APPLICATION FOR PERMANENT INJUNCTION

77.     BMC incorporates the allegations set forth in Sections IV through IX.

78.     Baker Hughes' actions complained of above are jeopardizing BMC's substantial reputation and goodwill, and, if allowed to proceed, will continue to jeopardize the reputation and goodwill of BMC, including in its valuable trademarks. Such acts have caused, are causing and will continue to cause, irreparable injury to BMC and the consuming public, and the threatened injury outweighs any hypothetical damage that the proposed injunction may cause Baker Hughes. Finally, the public interest favors the issuance of an injunction in this case.

79.     Unless the acts of Baker Hughes complained of above are restrained by this Court, they will continue to cause irreparable injury to BMC and to the public, for which there is no adequate remedy

at law. BMC seeks an injunction against Baker Hughes, its affiliates, and their officers, directors, agents, employees, representatives, successors, assigns, and those in privity or concert with them, from any and all sale, offering for sale, distribution, or advertising of any goods or services in connection with the Baker Marks, any colorable imitation thereof, or any colorable imitation of the BMC Marks. BMC further seeks an injunction and order for Baker Hughes to expressly abandon its pending U.S. Trademark Application No. 88/643,061.

## DEMAND FOR JURY TRIAL

80.     Plaintiff BMC hereby demands a trial by jury of any and all issues triable of right by a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## CONCLUSION AND PRAYER

WHEREFORE, Plaintiff BMC prays for entry of judgment against Defendants Baker Hughes, a GE company, LLC and Baker Hughes Company as follows:

a.      finding that Baker Hughes has willfully infringed the BMC Marks in violation of federal and Texas common law;

b.      finding that Baker Hughes has engaged in unfair competition in violation of federal law and Texas common law;

c.      finding that Baker Hughes has been unjustly enriched;

d.      enjoining Baker Hughes, its affiliates, and officers, directors, agents, employees, representatives, successors, assigns, and those in privity or concert with them, from the unauthorized and wrongful use of marks confusingly similar to the BMC Marks, in commerce in connection with Baker Hughes' products, services and business; and further enjoining Defendant Baker Hughes, a GE Company, LLC to expressly abandon its pending U.S. Trademark Application No. 88/643,061;

e.      awarding BMC all damages caused by the acts of Baker Hughes and all profits of Baker

22

Hughes from acts complained of, and/or all costs to BMC caused by Baker Hughes' activities complained of herein;

        f.      awarding BMC damages in accordance with 15 U.S.C. § 1117 and ordering Baker Hughes to account to and pay to Plaintiff all profits realized by its wrongful acts and also awarding BMC its actual damages;

        g.      trebling the damages and profits awarded to BMC as authorized by 15 U.S.C. § 1117;

        h.      awarding BMC its actual and punitive damages to which it is entitled under applicable federal and state laws;

        i.      granting BMC pre-judgment and post-judgment interest on the damages caused to BMC by reasons of Baker Hughes' unlawful activities complained of herein at the highest rates allowed by law;

        j.      finding that this is an exceptional case and awarding BMC its reasonable and necessary attorneys' fees in accordance with 15 U.S.C. § 1117; and

        k.      awarding BMC all such other and further relief, at law or in equity, as the Court may deem just and proper under the circumstances.

January 1, 2020                        Respectfully submitted,

                                    */s/ John J. Edmonds*         
                                    John J. Edmonds – LEAD COUNSEL
                                    Texas Bar No. 789758
                                    Stephen F. Schlather
                                    Texas Bar No. 24007993
                                    EDMONDS & SCHLATHER PLLC
                                    2501 Saltus Street
                                    Houston, Texas 77003
                                    Telephone: (713) 364-5291
                                    Facsimile: (713) 222-6651
                                    jedmonds@ip-lit.com

23

sschlather@ip-lit.com

***Attorneys for Plaintiff BMC Software, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.1.

January 1, 2020

*/s/ John J. Edmonds*
John J. Edmonds